Filed 4/13/15  In re V.I. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re V.I., a Person Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E061529 |
| Plaintiff and Respondent, | (Super.Ct.No. RIJ119024) |
| v. | OPINION |
| C.A., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Jacqueline C. Jackson, Judge.  Affirmed.

Jesse McGowan, under appointment by the Court of Appeal, for Defendant and Appellant.

Gregory P. Priamos, County Counsel, and Anna M. Marchand, Deputy County Counsel, for Plaintiff and Respondent.

Appellant C.A. (mother) appeals from the juvenile court's order of supervised visitation, regarding her daughter, V.I. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

On October 26, 2006, the Los Angeles County Department of Children and Family Services (CFS) filed a Welfare and Institutions Code[1] section 300 petition on behalf of mother's children, J.I. and V.I. At the time of the petition, V.I. (the child) was 3 years old.[2] The petition alleged that the child came within section 300, subdivisions (b) (failure to protect) and (g) (no provision for support). The petition further alleged that mother had an unresolved history of substance abuse.

In a detention report, the social worker reported that this family came to CFS's attention on or about February 18, 2006, as a result of a general neglect allegation. It was reported that mother neglected the child when she left her with the maternal grandparents for over one year, without any provision for care. The social worker further reported that mother was on drugs and had been in and out of rehabilitation, and that she only saw the child sporadically. The social worker interviewed the maternal grandmother, who said that mother abandoned the child, and that the child had been living with her for over one year. The maternal grandmother said that mother was in a sober living home, and when she called the home, she was told mother was kicked out. Mother had minimal contact

_____

[1] All further statutory references will be to the Welfare and Institutions Code, unless otherwise noted.

[2] Although both J.I. and the child were involved in the dependency proceedings, this appeal only concerns the child. Therefore, this opinion will only discuss the child, and not J.I.

2

with the maternal grandmother and the child since she had been out of rehabilitation. Mother's current whereabouts were unknown. The court ordered the child detained on October 26, 2006.

*Jurisdiction/Disposition*

The social worker filed a jurisdiction/disposition report on December 12, 2006, recommending that the court declare the child a dependent of the court, that mother participate in reunification services, and that mother have monitored visitation, twice a week, with CFS having the discretion to liberalize them to unmonitored day visits, overnights, and weekends, when appropriate.

On February 1, 2007, based on a mediated agreement, the court declared the child a dependent and ordered mother to participate in reunification services. The court ordered monitored visitation, with CFS having the discretion to liberalize them when appropriate.

*Six-month Status Review*

The social worker filed a six-month status review report on July 25, 2007. The social worker reported that the child was suitably placed with her maternal grandparents. The social worker further reported that mother was not in compliance with her case plan and that the social worker had no contact with her since April 13, 2007. As to visitation, mother's visits were sporadic. They were monitored by the maternal great-grandmother or maternal grandfather. The maternal grandmother reported on June 22, 2007, that mother visited, on average, once a week, beginning that month. The social worker opined that mother was not capable of taking care of her children. She had been evicted

3

and terminated from and/or quit approximately six jobs since the dependency case opened. At the six-month review hearing, the court continued mother's services.

*12-month Status Review*

The social worker filed a 12-month status review report on January 30, 2008, and reported that the maternal grandparents and the child relocated to Riverside County. The child was doing well. Mother had visited more regularly during the months of November and December 2007. The maternal grandparents reported that the visits were appropriate. The social worker reported that mother's priority was not her children, though, since her husband had cancer. Mother was not making progress with her case plan. The social worker thus recommended that reunification serves be terminated.

On March 6, 2008, the court found that mother was not in compliance with her case plan and terminated her reunification services. The court ordered all prior orders not in conflict to remain in full force and effect. The court then set a section 366.26 hearing.

*Section 366.26*

The social worker filed a section 366.26 report on July 22, 2008, recommending that the hearing be continued for at least 120 days in order to allow enough time to complete a reassessment of the maternal grandparents' home; a maternal cousin had moved into the residence and needed to Live Scan. The maternal grandparents informed CFS that they no longer wanted to pursue adoption, but rather legal guardianship. The social worker reported that mother was having unmonitored day visits with the child, and that the visits were reportedly going well. Mother was also participating in a drug treatment program.

The matter was continued several times for various reasons.

The maternal grandparents' home was subsequently approved on January 15, 2008. The social worker recommended that the court grant legal guardianship to the maternal grandparents.

In an interim report filed on May 21, 2009, the social worker reported that mother was in agreement with the maternal grandparents becoming the legal guardians.

At a section 366.26 hearing on May 28, 2009, the court ordered legal guardianship as the permanent plan. However, the court found that further CFS supervision was needed and retained jurisdiction. The order establishing guardianship simply provided for visitation, but did not indicate whether the visits were to be supervised or unsupervised.

*Transfer to Riverside County*

In early December 2009, the Los Angeles County Juvenile Court ordered the case transferred to Riverside County. On December 22, 2009, the Riverside County Juvenile Court accepted the transfer.

*Postpermanent Plan Review*

The social worker filed a status review report on June 8, 2010, recommending that the dependency be terminated. The social worker reported that mother had not maintained regular visitation with the child. The social worker attached a copy of the case plan, which stated that mother was to contact the Riverside County Department of Public Social Services (DPSS) to arrange visits. At a hearing on June 22, 2010, the court followed the recommendation and terminated the dependency.

5

*Section 388*

On May 6, 2014, mother filed a section 388 petition, in propria persona, asking the court to rescind the legal guardianship, place the child back in her home, "lift [a] domestic violen[ce] restraining order,"[3] and transfer the case back to Los Angeles County. As to changed circumstances, mother alleged that the maternal grandmother physically abused the child's sister, that the maternal grandfather "failed to protect," and that the maternal grandfather admitted to having contact with an alleged rapist. Mother feared the child was at risk of physical, sexual, and mental abuse. As to best interest of the child, mother alleged that the maternal grandparents failed to follow court orders regarding visitation between her and the child, and that the bond between them had been severely strained as a result. The court set a hearing for May 30, 2014.

On May 30, 2014, the court held a hearing on the petition. Mother appeared, and the court appointed her counsel. The court continued the matter to June 30, 2014, for DPSS to complete an investigation/report. The court further ordered DPSS to establish a visitation schedule with mother, in compliance with the restraining order.

The social worker filed an addendum report on June 25, 2014, and recommended that the court affirm the legal guardianship. The social worker also recommended that the visits between mother and the child occur at least one time a month, and that they be supervised by an independent adult agreed upon by all parties. The social worker reported that she interviewed mother and asked her to bring all of the paperwork that

---

**3** The maternal grandfather reported that, at some point, he filed a temporary restraining order against mother.

6

reflected the court order's regarding either visitation or custody. Mother brought some letters from individuals stating that she was a good person and would make a good employee, and two certificates of completion for classes. She also brought three court orders, but they did not apply to the child. She presented a visitation order, but it applied to J.I. Mother insisted that even though the papers did not have the child's name on them, they applied to her. Mother further stated her belief that the maternal grandmother abused the child by hitting her in the face, and the maternal grandparents did not want the child anymore.

The social worker interviewed the maternal grandfather, who said that he was concerned for the child because mother was very difficult to get along with. He had tried to talk to her on the telephone, but every conversation ended up in an argument. He stated that he filed the temporary restraining order between himself and mother because mother could be hostile and threatening. The maternal grandfather said that if he was the court, he would reaffirm the current guardianship order and order two supervised visits a month.

The social worker also interviewed the maternal grandmother, who stated that she was concerned for the child's safety because she believed mother continued to use methamphetamine and marijuana. The maternal grandmother expressed concern with mother's mental health, noting that she had been placed on a section 5150 hold at least one time. The maternal grandmother said she thought the court should maintain the guardianship order and order no visitation.

The social worker additionally interviewed the child, who said that she did not want to go to mother's house because she did not feel safe there. She did not know all the people there and did not know mother's current husband. She said they had a lot of dogs with fleas. The child said she wanted to stay with her grandparents because they kept her safe and met her needs. The child added that she never wants to live with her mother. She wanted to see her more often, but just in the local area. She said if they were going outside of the area, another adult needed to be with them, since she was afraid mother might not bring her back.

The social worker further reported that mother had a history of methamphetamine and marijuana use. However, mother refused to complete a test, so it was unknown if she was currently clean and sober. She also had a history of mental health problems. The social worker noted that mother could not demonstrate that she had addressed these concerns.

The court held the continued section 388 hearing on June 30, 2014. Mother was not present, but was represented by counsel. County counsel asked the court to deny the motion and order supervised visitation once a month, to be supervised by a third party agreed upon by the legal guardians. Counsel for the child stated that the child would like visits. She informed the court, as follows: "I think there was a meeting and it was agreed upon which would be the best resolution. I am asking that the Court follow the recommendations." The court asked if the child was comfortable with the visits in a public setting, and counsel said yes. Mother's counsel informed the court that mother called him two days prior, and that he emailed her the social worker's report that was

8

prepared for the hearing. Mother said she would bring her counsel information that morning, but failed to appear at the hearing. Her counsel asked the court for a minimum of one visit a month, and added that perhaps "more time [could be arranged] between the parties as they go forward." Mother's counsel said the child wanted a relationship with her mother and then stated, "So we'd ask the Court to make the appropriate visitation order." Counsel for the legal guardians (the maternal grandparents) submitted on the social worker's recommendations, and stated, "my understanding is the Court denied the JV-180 except for regarding visitation, and we are only here regarding visitation at this time." The court responded, "Right. I don't think I had filled out the paperwork, which I'll do today so it will have today's date. But the 388 petition is going to be denied in its entirety. And then I'll make the visitation orders." The court proceeded to deny the section 388 petition, since it felt that it was not in the child's best interest. The court then ordered visitation to be once a month for two hours, supervised by an adult approved by the legal guardians. The visits were ordered to be in a public location. Mother's counsel asked if there could be more time, if the parties agreed. The court said it was not inclined to order more time unless the child asked for it, noting that the child was 11 years old and that the family had been through a lot. The court asked if there was anything else, and mother's counsel said, "Nothing further."

## ANALYSIS

### The Court Properly Ordered Supervised Visitation

Mother argues that the court's order permitting only supervised visitation should be reversed. Specifically, she contends that DPSS was required to file a section 388

9

petition to modify the visitation term of the legal guardianship pursuant to California Rules of Court, rule 5.740(c) (rule 5.740(c)). She further argues that the change in the visitation order, from unsupervised visits to supervised, was an abuse of discretion, since there had been no problems with visits and she had regained custody of her other daughter. We conclude that the court properly ordered supervised visitation.

Mother first argues that the order modifying the legal guardianship order must be reversed because DPSS "failed to seek such a modification through the filing of a section 388 petition, as due process and rule authority required." However, the premise of mother's argument is false, since she appears to be asserting that DPSS sought a modification in visitation. The record establishes that DPSS did not seek to modify visitation. Mother filed her section 388 petition, asking the court to rescind the legal guardianship. The court held the initial hearing on the petition on May 30, 2014, but continued the matter for investigation. At that same hearing, the court additionally ordered DPSS to establish a visitation schedule with mother, "in compliance with [the] restraining order" that the maternal grandfather had filed. We note that the previous visitation order, which was made when the court established the legal guardianship, merely provided for visitation, but did not indicate any schedule, or whether the visits were to be supervised or unsupervised. Thus, the court apparently wanted to make a more specific order, noting that the visitation schedule should consider the restraining

10

order that the maternal grandfather had filed against mother.[4] In compliance with the court's order to establish a visitation schedule, DPSS investigated the matter and recommended that visits occur at least one time a month for two hours, and that they be supervised by an independent adult agreed upon by all parties. Thus, *the court* raised the issue of visitation, apparently on its own. Since DPSS was not seeking to modify the visitation term of the legal guardianship, as mother claims, it was not required to file a section 388 petition.

Moreover, the record indicates that mother was fully aware that the court was going to make a visitation order. By the time of the continued hearing on June 30, 2014, the court had already denied the section 388 petition and, as it indicated, just needed to "fill[] out the paperwork." As the child's counsel stated and the court confirmed, the only issue to be determined at that hearing was visitation. The child's counsel indicated that there had previously been a meeting, and "it was agreed upon which would be the best resolution." When the court addressed mother's counsel, he asked the court for a minimum of one visit a month. He stated that the child wanted a relationship with mother and simply said, "So we'd ask the Court to make the appropriate visitation order." Thus, mother's counsel was aware that the court was going to make a visitation order at that hearing. We further note that mother's counsel did *not* request unsupervised visitation. He also did not object when the court ordered supervised visitation. He only

---

[4] Although the record does not indicate when the restraining order was obtained, the first mention of it was in the social worker's report dated June 30, 2014. Thus, it is reasonable to assume that the restraining order was obtained some time after the legal guardianship was established in 2009.

asked if there could be more time if the parties agreed. Therefore, even assuming arguendo that DPSS was seeking a modification in the visitation order, as mother claims, mother has waived her claims on appeal. She failed to raise any objections in the juvenile court, but rather acquiesced in the proceedings. (*In re Dakota S.* (2000) 85 Cal.App.4th 494, 501-502.)

Mother's reliance on *In re Lance V.* (2001) 90 Cal.App.4th 668 (*Lance V.*) in support of her position is misplaced. *Lance V.* concerned a change in a visitation order following an unsuccessful mediation hearing. (*Id.* at pp. 673-675.) The court in that case extensively discussed the purpose of mediation. (*Id.* at pp. 674-676.) Furthermore, the court reversed the juvenile court's order modifying visitation because the mother was deprived of due process, in that she was not provided notice that a change might occur, and she was not given an opportunity to be heard. (*Id.* at p. 676.)

In contrast, in the instant case, mother had notice that the court was going to make another visitation order, as indicated by the record of the June 30, 2014, hearing. (See *ante*.) We further note that mother was present at the previous hearing, when the court ordered DPSS to establish a visitation schedule with mother, in compliance with the restraining order. She also had notice of the social worker's recommendation for the court to order supervised visitation. Moreover, as discussed *ante*, the main issue at the June 30, 2014 hearing was visitation, and the court gave every party an opportunity to speak. Although mother claims that "it was not even clear whether [she] received the social worker's report in advance of the hearing," mother's counsel had the report, and he verified that he had emailed it to her prior to the hearing. Although mother was not

personally present at the hearing, she was represented by counsel, and her counsel discussed the issue of the visitation order on her behalf. "The general rule is that personal appearance by a party at a civil proceeding is not essential; appearance by an attorney is sufficient and equally effective." (*In re Dolly D.* (1995) 41 Cal.App.4th 440, 445.)

Furthermore, the court had the jurisdiction to make such visitation order. "'A juvenile court has a continuing responsibility to account for the welfare of a dependent child under its jurisdiction, wherever placed, unless and until a permanent and stable home is established.' [Citation.] Where legal guardianship is chosen pursuant to section 366.26, the juvenile court retains jurisdiction over the child until the legal guardianship is established. [Citation.] Where a relative is appointed the legal guardian, and the child has been placed with the relative for at least 12 months, 'the court shall, except if the relative guardian objects, or upon a finding of exceptional circumstances, terminate its dependency jurisdiction and retain jurisdiction over the child as a ward of the guardianship, as authorized by [section 366.4].'" (*In re Joshua S.* (2003) 106 Cal.App.4th 1341, 1352-1353, fn. and italics omitted.) We note that rule 5.740, which mother cites, "does not divest the juvenile court of its authority to fashion orders in the best interest of the minor while maintaining its continuing jurisdiction over the legal guardianship." (*In re Z.C.* (2009) 178 Cal.App.4th 1271, 1286; see § 366.4.)

Finally, contrary to mother's claim, the decision to order supervised visitation was well within the court's discretion. The maternal grandfather told the social worker that mother could be hostile and threatening, which is why he obtained a restraining order

against her. He was concerned about the child because mother was difficult to get along with, and he felt the court should order supervised visitation. The maternal grandmother also expressed concern for the child's safety since she believed mother was using controlled substances. The maternal grandmother was concerned about the people who lived with mother, including mother's extremely ill husband and another male, who she believed had drug and assault convictions. The maternal grandmother was further worried about mother's mental health, noting that she had previously been placed on a section 5150 hold. The maternal grandmother did not think the court should order *any* visitation between mother and the child. Moreover, the child said did not want to go to mother's house because she did not feel safe there. The child told the social worker that she did want to visit mother, but if it was going to be outside the Banning/Beaumont area, she wanted another adult with them, for fear that mother might not bring her back. The social worker confirmed that mother had a history of methamphetamine and marijuana use, and that it was unknown if she was currently sober, since she refused to drug test. The social worker also confirmed that mother had a history of mental health problems. In light of this evidence, we cannot say that the court abused its discretion in ordering the visitation to be supervised.

14

## DISPOSITION

The order is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


HOLLENHORST
Acting P. J.


We concur:


MILLER
J.


CODRINGTON
J.

15